`

T. Jason Wood, Esq., ISB No. 5016
WOOD LAW GROUP, PC
1488 Midway Avenue
Idaho Falls, ID  83406
Telephone: (208) 497-0400
Fax: (208) 932-4380
Email: jason@woodlaw.net

Joe W. Frick, Esq.
JOE FRICK LAW, PLLC
950 W. Bannock Street, Suite 1100
Boise, ID  83702
Telephone: (208) 401-9311
Fax: (208) 550-3209
Email: joe@joefricklaw.com

Attorneys for Plaintiffs

IN THE UNITED STATE DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAVONNA RETTEW, individually and as personal representative of the ESTATE OF THOMAS RETTEW; KRISTA MOSLEY, as the mother and first friend of K.R., a minor; and KENNETH TORRES, as guardian and next friend of R.R., a minor,<br><br>    Plaintiffs,<br><br>v.<br><br>CASSIA COUNTY, MINIDOKA COUNTY, MINI-CASSIA CRIMINAL JUSTICE CENTER, STEVE JENSEN, KEVIN DILLON, DAVID WELLS, DARWIN JOHNSON, LAINE MANSFIELD, REGINALD BALLIOLA, DAVID HIRSCH, and JOHN DOES I - X,<br><br>    Defendants. | Case No. 1:20-cv-00386<br><br><br><br>COMPLAINT AND DEMAND<br>FOR JURY TRIAL |

For cause of action against the above-named defendants, the Plaintiffs above-named alleged as follows:

1 -    COMPLAINT AND DEMAND FOR JURY TRIAL

1.      This is an action for declaratory relief and for monetary damages, arising under 42 U.S.C. § 1983, under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, and under Idaho statutory and common law.

2.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 1367, and 42 U.S.C. § 1988.

3.      Venue is proper under 28 U.S.C. § 1391(b).

4.      Plaintiff Javonna Rettew is the surviving spouse, heir, dependant, and personal representative of the Estate of Thomas Rettew (hereinafter "Thomas").

5.      Plaintiff Krista Mosley is the mother and next friend of K.R., a minor child, who is Thomas' child, heir, and dependant.

6.      Kenneth Torres is the guardian and next friend of R.R., a minor, who is Thomas' child, heir, and dependant.

7.      Defendant Cassia County is, and at all times material hereto was, a political subdivision of the State of Idaho acting pursuant to established county policies, procedures, and practices and under color of Idaho law.

8.      Defendant Minidoka County is, and at all times material hereto was, a political subdivision of the State of Idaho acting pursuant to policies, procedures, and practices established by such county and under color of Idaho law.

9.      Together defendants Cassia County and Minidoka County jointly control and operate the Mini-Cassia Criminal Justice Center (hereinafter "MCCJC"), as a jail and criminal detention center for both counties (hereinafter collectively referred to herein as the "county defendants").

2 -    COMPLAINT AND DEMAND FOR JURY TRIAL

10.     Steve Jensen, Kevin Dillon, David Wells, Darwin Johnson, Laine Mansfield, Reginald Balliola, and David Hirsch are, and at all times material hereto were, Deputy Sheriffs for Cassia County, Minidoka County, and/or MCCJC, acting in their individual capacities under color if Idaho law within the course and scope of their respective employment with such entities and pursuant to official the official policies, customs and/or practices of such entities.

11.     Defendants John Does I through X are, and at all times material hereto were, duly appointed deputies, jail guards, agents, employees, health-care providers and/or officers of defendants Cassia County, Minidoka County, and/or the Mini-Cassia Criminal Justice Center, acting in their individual capacities under color if Idaho law within the course and scope of their respective employment with such entities and pursuant to official the official policies, customs and/or practices of such entities.

12.     Plaintiffs do not know the true names or identities of the defendants named herein as John Does I through X and therefore pray leave to amend this Complaint to substitute their names herein when their true names and identities are ascertained.

13.     At approximately 17:15 hours on January 17, 2019, Minidoka County Deputy Sheriffs Severe and Love performed a traffic stop on Thomas, arrested him on outstanding warrants, and transported him to MCCJC.

14.     During the stop and arrest, Thomas ingested approximately 8 grams of methamphetamine and about 4 grams of heroine in an effort to hide them.

15.     Deputy Severe noticed during the arrest that a plastic baggy containing a white crystal substance in it which was in Thomas' hand had disappeared despite a thorough search of Thomas and scene of arrest.

16.     Sometime between Thomas' stop and arrest and the night shift change at approximately 19:00 hours, the defendants learned that Thomas had recently ingested a large amount of a controlled substance(s) and/or that he was otherwise "detoxing."

17.     Because the defendants, and each of them, knew Thomas was medically at risk due to his recent ingestion of and/or detoxification from controlled substance(s), they required Thomas to be housed in a medical holding cell with cameras so that he could be observed for his own safety.

18.     In the audio recordings from Minidoka County Sheriff's Office, Minidoka County Dispatch, Minidoka EMS, Cassia County Sheriff's Office, Cassia County Dispatch, Cassia County EMS, and Mini-Cassia Jail radio and telephone systems, from the night in question, the latter of which was heard by all the night shift defendants, defendant Jensen can be heard at about 18:13 hours instructing defendant Wells to put cameras on Holding Cell 3 for Thomas because he was detoxing and needed to be watched.

19.     At approximately 19:00 hours, during the briefing for the oncoming night shift, defendants Hirsch, Burns and/or Dillon advised the deputies on the oncoming night shift that Thomas was in Holding Cell 3 and was detoxing.

20.     The four deputies coming on the night shift at MCCJC on January 17, 2019 were defendants Jensen, Johnson, Wells and Mansfield (hereinafter "night shift defendants").

21.     The defendants, and each of them, knew that they were required by law and/or widely accepted protocol to personally (not merely by camera) check on anyone placed in a holding cell who is suspected of detoxing, and they knew they were required to do so specifically with regard to Thomas on the night of January 17, 2019, every fifteen (15) minutes and everyone else every twenty-five (25) minutes.

22.     In fact, after Thomas was placed in Holding Cell 3 defendant Wells sent several radio transmissions to the other three night shift defendants to check on Thomas because he was detoxing.

23.     Nevertheless, none of the night shift defendants checked on Thomas between 18:16 hours and 19:51 on the night of January 17, 2019.

24.     Observable signs of Thomas' acute methamphetamine toxicity commenced no later than at 19:00 hours.  Had the night shift defendants checked on Thomas as they knew they were required to do, they would have observed the following, as recorded by the Holding Cell 3 video camera, and more:

    a.     19:00 hours – Thomas becomes restless and begins moving around under the blankets;

    b.     19:05 hours – Thomas gets up and vomits into the toilet;

    c.     19:17 hours – Thomas begins shaking;

    d.     19:25 hours – Thomas is noticeably shaking, so his cell mate, Alex, covers him with blankets;

    e.     19:33 hours –  asks Thomas repeatedly if he is "Good". Thomas responds;

    f.     19:45 hours –  knocks on the door for help from the night shift defendants, to no avail;

    g.     19:47 hours – Thomas and  have a dialog, unknown what is said;

    h.     19:49 hours –  knocks on the door *again* for help from the night shift defendants, to no avail;

    i.     19:50 hours – Thomas gestures to his mouth and whispers.

25. When defendants Jensen and Mansfield finally opened Thomas' cell at about 19:51, Mansfield remarked "it looks like he his having a seizure," to which Jensen replied "he is detoxing."

26. Nevertheless the night shift defendants remained deliberately indifferent to Thomas' serious medical need for treatment of his acute methamphetamine toxicity.

27. For example, despite their knowledge that Thomas was "detoxing" and having seizures, the night shift defendants:

a. only sporadically intermittently checked on him over the course of the next two hours, occasionally exceeding the 15-minute maximum required by law and/or protocol;

b. Between 19:53 hours through 20:54 hours there are several instances where there is a dialog between Thomas and Alex while Thomas is visibly sweating, shaking uncontrollably, and spinning on the floor which is causing him to put pressure on the back of his head;

c. At 20:06 hours defendant Wells tells defendant Jensen to look into the holding cell and see what is going on. Jensen checks and notifies Wells that Thomas is detoxing and Alex is keeping his feet out of the toilet;

d. At 20:38 hours Thomas sits up and vomits into the blankets;

e. At 20:46 hours Thomas appears to be hitting his head on the wall and losing muscular control;

f. At 21:03 hours defendant Mansfield enters the holding cell and has a dialog with Alex. Defendant Mansfield has Alex put the blankets and his t-shirt, which he used to apply a cool/wet compress to Thomas' head, into the hallway to be washed;

g.      At 21:27 Thomas' movements are erratic and he attempts to sit up but is unable to do so.  His movements appear to be convulsive and he rolls onto his left side, raking his left ocular area on the floor causing it to bleed.  His Movements then begin to slow.

h.      At 21:41 hours defendant Johnson opens the door to Holding Cell 3 and has Alex exit and report to booking counter.  Johnson asks Jensen come to the booking area.  Johnson then retrieves a mattress and brings it to the holding cell.

i.      At 21:42 hours defendants Jensen and Johnson begin cleaning the area around Thomas' head. Jensen finally begins to check Thomas for responsiveness as Johnson watches.    Thomas does not appear to be moving.

j.      At 21:47 hours Jensen checks Thomas for a pulse and cannot find one.

k.      Not until 21:49, almost 2 hours after the defendants first observed Thomas having a seizure, does Johnson requests an ambulance and begin a lockdown of the facility while Wells calls 911 and requests an ambulance to respond to the jail for an inmate coming down off of something.

l.      Att 21:58 hours Cassia County EMS are on scene and take over care of Thomas who is transported to the Cassia Regional he is later pronounced dead.

28.    The county defendants performed little or no internal investigation into the circumstances leading to Thomas' death.

29.     The individual defendants prepared and submitted incident or other reports and/or statements in the regular course of their duties for the county defendants, who have refused to provide copies to Plaintiffs under the false guise of an "ongoing investigation."

30.     The Magic Valley Critical Incident Task Force ("CITF") referred investigation of the circumstances of Thomas' death to the Twin Falls County Sheriff's Office ("TFSO").

31.     In addition to the foregoing, the CITF investigation revealed that defendant Jensen, in his internal incident report/statement, affirmed that the defendants were aware and advised that Thomas was "detoxing," but in his CITF interview changed his story and claimed no one knew or was advised of Thomas' recent illicit drug use or "detoxification."

32.     Jensen's attempted retraction is contradicted by multiple real-time audio recordings of his own voice advising the other night shift defendants that Thomas was "detoxing," and by the CITF interview statements of defendants Wells and Johnson who were "adamant that they were told Thomas was detoxing."

33.     Despite the foregoing, defendants Dillon, Balliola, and Mansfield all falsely denied ever receiving information that Thomas had ingested any drugs or was "detoxing" before his death.

34.     As set forth above all the defendants knew Thomas was in serious medical need by virtue of recent illicit drug ingestion, yet they all falsely denied such knowledge or otherwise deliberately withheld it from investigators and/or from the investigative reports, except defendants Wells and Johnson.

35.     The CITF concluded that "[a]lthough potential violations outlined in Cassia County policy, American Jails Association, and Idaho Sheriff's Association were observed, this agency could not detect violations in Idaho Criminal Code to have occurred."

36.    The CITF's written report of its investigation is believed to consist of 154 pages; however, the CITF has refused to provide Plaintiffs with any but 43 pages of it.

37.    The county defendants received and were made aware of the results of the CITF's investigation, yet they took no steps to correct, reprimand or discharge the individual defendants, and otherwise failed to admit their acts and omissions were in error.

38.    The county defendants agreed with and/or ratified the individual defendants' acts and omissions alleged above.

39.    The county defendants failed to adequately train and supervise the individual defendants in properly caring for the serious medical needs of detainees and inmates housed in MCCJC.

40.    The county defendants' deliberate indifference to Thomas' serious medical needs was only one part of a pattern and practice as further exhibited by similar constitutional violations that occurred both before and after Thomas' death.

41.    The defendants' unlawful conduct as described above was in violation of Plaintiff's clearly established rights guaranteed by, *inter alia*, the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and no reasonable law enforcement agency or official under the circumstances reasonably could have believed their conduct was not in violation of Plaintiff's aforesaid constitutional rights.

42.    Such constitutional violations were caused, in whole or in part, by the official policies, customs and/or practices of the county defendants.

43.     With the possible exception of defendants Wells and/or Johnson, the defendants, and each of them, individually and/or acting in concert, with knowledge of a potential lawsuit arising from their constitutional violations alleged above, wrongfully destroyed, concealed, and/or falsified evidence in order to disrupt or defeat the potential lawsuit.

44.     The defendants' wrongful destruction, concealment, and/or falsification of evidence has disrupted and likely will continue to disrupted Plaintiff's lawsuit by, *inter alia*, needlessly complicating the lawsuit and increasing in the cost of pursuing liability, decreasing the value of a their claims, causing delay in resolution thereof, and possibly precluding Plaintiffs altogether from obtaining the redress for the violations of their legal and constitutional rights to which they are otherwise entitled.

45.     As a direct and proximate result of the defendants' unlawful acts and omissions as alleged above, Thomas and each of the Plaintiffs have suffered substantial and permanent special, general, and consequential damages whose nature and mounts will be established at trial.

46.     The defendants are entitled to recover their own damages as well as those suffered by Thomas that were proximately caused by the defendants' violation of Thomas' constitutional rights pursuant to 42 U.S.C. § 1983.

47.     Pursuant to Idaho Code § 5-311, the individual Plaintiffs are each entitled to recover their own damages suffered as a direct and proximate result of the defendants' acts and omissions alleged above.

48.     The individual defendants' unlawful acts and omissions as alleged above were grossly negligent, reckless, willful and/or wanton, within the meaning of Idaho Code § 6-904B.

49.     The defendants' unlawful acts, omissions, and policies as alleged above were malicious, wanton, oppressive, and/or in reckless disregard of Plaintiff's federally protected rights, for which Plaintiff is entitled to an award of punitive damages under 42 U.S.C. § 1983.

50.     The defendants knew or should have known that their actions as alleged above not only created an unreasonable risk of harm to Plaintiffs and others, but involved a high degree of probability that such harm would actually result.  Consequently, the defendants' actions constitute "willful or reckless misconduct" within the meaning of Idaho Code § 6-1603(4)(a), thereby removing any statutory limitations on Plaintiff's recovery for his noneconomic damages herein.

51.     The individual defendants' unlawful acts and omissions as alleged above were oppressive, fraudulent, malicious or outrageous, within the meaning of Idaho Code § 6-1604(1).

52.     Plaintiff timely posted a bond as required by Idaho Code § 6-610.

53.     Plaintiff is entitled to recover his reasonable attorney fees incurred in this matter pursuant to 28 U.S.C. §1988.

54.     Plaintiff is entitled to an award of prejudgment interest on the special damages he suffered at the defendants' hands from the time he incurred or suffered them until judgment is entered in this matter, pursuant to Idaho Code §28-22-104, at the statutory rate of twelve percent (12%) per annum.

55.     Plaintiff demands a trial by jury.

WHEREFORE, Plaintiff prays for the following judgment and relief against the defendants, jointly and severally, as follows:

1.     For a judicial declaration that the defendants' conduct and policies were in violation of Plaintiff's rights secured by the United States Constitution as alleged above.

2.  For an award of special, general, and consequential damages sustained by Thomas and each Plaintiff in such amounts to be proven at trial.

3.  For an award of punitive damages in such amounts to be proven at trial.

4.  For an award of Plaintiff's reasonable attorney fees incurred in this matter.

5.  For an award of prejudgment interest on all special damages awarded herein.

6.  For Plaintiffs' costs incurred in prosecuting this action.

7.  For such further relief in Plaintiffs' favor as this Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues triable to a jury in this matter.

DATED this 4th day of August, 2020.

WOOD LAW GROUP, PC    JOE FRICK LAW, PLLC


By: /s/_____ By: /s/_____
   T. Jason Wood, Esq.       Joe W. Frick, Esq.


C:\Users\Jason\Box\WLG\TJW\4245 RETTEW\PLEADINGS\001 Complaint.wpd